(No. 17218.—Reversed and remanded.)
Sarah E. McDonald *et al.* Appellees, *vs.* Lewis E. Bartlett, Appellant.

*Opinion filed February 16, 1927.*

1. Specific performance—*purchaser cannot avoid his default of performance by absence from the State—notice.* A vendee in a contract for the purchase of premises cannot, by absenting himself from the State, escape the consequences of his default in making payments as provided in the contract, and where it is shown that he could not be found he cannot successfully contend that he was not notified of the vendor's declaration of forfeiture and demand for possession, especially where notice is given his co-purchaser, through whom he is claiming performance as his agent.

2. Same—*equity will not set aside a rightfully declared forfeiture.* Equity recognizes the right of competent parties to incorporate forfeiture provisions in their contracts and will respect the rights of a party who has rightfully declared a forfeiture, and will not set such forfeiture aside where to do so would, in effect, create a contract different from the one which the parties themselves have made.

3. Same—*upon what principle, only, will equity grant specific performance.* It is only on the principle that it is unjust and inequitable to permit a contract to remain unexecuted that a court of equity will grant relief by way of specific performance.

4. Same—*what must be shown to warrant specific performance of contract to convey.* One who seeks specifically to enforce a contract for the sale of real estate must prove that he is able, ready and willing to comply but is prevented from doing so by the refusal of the other party to perform, and the proof in such case must be clear and satisfactory.

Appeal from the Superior Court of Cook county; the Hon. Oscar Hebel, Judge, presiding.

Hoover & Cody, for appellant.

William Slack, for appellees.

Mr. Justice DeYoung delivered the opinion of the court:

Sarah E. McDonald and George T. McDonald on August 20, 1918, filed their bill against Lewis E. Bartlett in the superior court of Cook county for the specific performance of a contract for the sale of certain real estate. From a decree rendered in favor of the complainants on October 1, 1925, the defendant prosecutes this appeal.

The bill of complaint alleges that on May 19, 1909, the parties entered into the following contract:

"<em>May 19, 1909.</em>

"Received of Sarah E. McDonald and George T. McDonald (her husband) fifty ($50) dollars for rent of 11069 1st street, Morgan Park, for the period of thirty days next ensuing. Tenant shall have the right to renew tenancy at expiration of said thirty (30) days upon payment of twelve ($12) dollars on the 19th day of each succeeding month until $600 and interest, insurance, taxes, assessments and other charges are paid in full, at the expiration of which time I agree to execute quit-claim deed for said premises to them.

Lewis E. Bartlett."

—that the complainants took immediate possession of the premises, made valuable improvements, paid taxes, assessments, insurance and interest, and had complied with all the provisions of the contract on and prior to July 18, 1913; that on August 18, 1913, the defendant rendered a statement showing a balance of $255.02 still owing to him on July 18 of the same year, but that, on the contrary, the defendant was actually indebted to the complainants; that the defendant instituted suit against Sarah E. McDonald

in the municipal court of Chicago for possession of the premises and recovered judgment, and that he threatens to dispossess her unless enjoined. The prayer of the bill not only sought specific performance of the contract but also an accounting and an injunction.

The defendant in his answer avers that the instrument upon which the complainants relied was only a receipt given pursuant to the actual contract existing between the parties. The contract, set forth verbatim in the answer, also bears date May 19, 1909, and provides for the conveyance of the premises to the complainants by a quit-claim deed from the defendant upon the payment of $600, of which $50 was required to be paid in cash and the balance in monthly installments of $12 each until the purchase price should be fully paid, with interest on the unpaid portion at six per cent per annum, payable semi-annually. The purchasers also covenanted to pay the taxes and assessments levied on the premises subsequently to the year 1907. The contract contains these provisions: "And in case of failure of the said party of the second part to make either of the payments or any part thereof, or perform any of the covenants on their part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined and the party of the second part shall forfeit all payments made by them on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by him sustained and for rent of said property, and shall have the right to re-enter and take possession of the premises aforesaid; and a written notice of such forfeiture and re-entry served upon the said second party, his heirs, executors or assigns, or recorded in the recorder's office of said county, shall be sufficient evidence of such election, forfeiture and re-entry.  *  *  *  This contract is not to be put on record until its terms have been fully complied with, but shall be placed in the hands of J. S. Bartlett & Son in escrow, and

shall be delivered to party of the second part only when all payments have been made according to its terms. * * * The time of payment shall be the essence of this contract."

The answer denies complainants' continued possession of the premises, avers their separation as husband and wife, their default in the payment of taxes, insurance and interest, their abandonment of the contract, the occupancy of the premises by a tenant, the giving of a notice by the defendant to the complainants and the tenant demanding immediate possession, and the tenant's attornment to the defendant; avers that Mrs. McDonald filed a suit for divorce against her husband, in which suit she claimed sole ownership of the premises; that the defendant, Bartlett, gave notice to her that he owned the property; that she filed a petition against Bartlett in her suit for divorce seeking the application to her use of the rents collected by him and for an order restraining interference with her possession of the property; that after a hearing on the petition the court on August 12, 1916, found that the property belonged to Bartlett, that he was entitled to the rents derived therefrom, and the prayer of the petition was denied; that this decision has never been reviewed and that it is binding upon Mrs. McDonald and is *res judicata* between the parties. It is further averred that the defendant took possession of the property in July, 1916, and has continued in possession ever since; that he paid the taxes and insurance premiums and made certain improvements required by the health department of the city of Chicago; that in July, 1918, Mrs. McDonald forcibly re-entered the premises; that the defendant then demanded immediate possession and instituted a forcible entry and detainer suit against her in the municipal court of Chicago, in which suit judgment for possession was rendered in his favor; that she appealed to the Appellate Court but the appeal was dismissed, and, pursuant to a remanding order, a writ of restitution was issued, and that the judgment is a final adjudication adverse to her

right to the possession of the property. The defendant in his answer denied that the complainants had made any permanent improvements upon the premises, that he had received any rents for the benefit of the complainants or that there was a balance in his hands owing to them, but he averred that the complainants had made no payment whatever on account of the contract since July 18, 1913, and that the sums of money which they had paid aggregated less. than the fair rental value of the property for the period of their occupancy. Complainants' right to an accounting, injunction or other equitable relief was specifically denied. A replication was filed to the answer.

The cause was referred to a master in chancery, who died before the taking of evidence was concluded. The hearing was continued under order of court before a special master, who made a report recommending that a decree be entered directing a conveyance to the complainants upon payment of the sum found due from them. Both parties filed objections to the master's report. After a modification of that report the objections were ordered to stand as exceptions. A decree was rendered approving and confirming the master's report except as modified in certain respects, and directing the complainants to pay $814.42 found to be owing by them on their contract, and also $65 advanced by the defendant for reporting and transcribing the evidence before the master. Upon payment of these sums the defendant was ordered to execute a quit-claim deed conveying the premises to the complainants, and in the event of his non-compliance a master in chancery was authorized and empowered to make the conveyance. Failure to pay the sums mentioned within ten days after the entry of the decree, it was provided, would result in its vacation and the dismissal of the bill for want of equity. The costs were assessed against the complainants.

By the decree the court found, among other things, that the complainants had made payments on account of the

contract prior to February, 1913, but that the defendant
had been compelled to make advancements for taxes and
insurance and that there was then a balance due and owing
to him; that since February, 1913, the complainants had
paid nothing in reduction of the purchase price, nor had
they paid any insurance premiums or taxes, except only the
taxes for the year 1919; that the premises were partially
destroyed by fire in February, 1913, and that the insur-
ance companies paid $421.20 in settlement of the loss, all
of which the defendant paid to the contractor who made
the repairs; that George T. McDonald left the State in
1916 and was absent about two years; that prior to his de-
parture he let the premises to a tenant, James E. Preston,
but reserved a room for himself, where he stored his fur-
niture; that on July 11, 1916, the defendant served on
Sarah E. McDonald and Preston a written notice ad-
dressed to them and George T. McDonald demanding im-
mediate possession of the premises, but that the notice was
not served on McDonald; that after the service of the
notice Preston entered into a lease with the defendant at a
rental of $10 per month, and paid him from 1916 to 1918
under that lease a total of $230; that Mrs. McDonald in-
stituted suit for divorce against her husband in September,
1913, and in that suit she filed a petition, to which Bart-
lett was a party, alleging that she had paid the purchase
price of the property but that Bartlett refused to convey it
to her, and asking that he be required to show what inter-
est, if any, he claimed in the property, that he be required
to execute a quit-claim deed to her and that he be enjoined
from collecting rent from Preston; that the issue was de-
termined in Bartlett's favor and the prayer of the petition
was denied; that from July, 1916, to 1918, the defendant
made improvements on the premises, in compliance with
the city health department's orders, at a cost of $203.88,—
substantially the sum of the rent collected by him from
Preston,—and that the improvements were properly made;

that Mrs. McDonald in July, 1918, forcibly re-entered the premises, and when Bartlett was informed of the fact he filed a suit in the municipal court of Chicago and recovered judgment for possession against her; that the instant suit was then brought by her to restrain Bartlett from dispossessing her by authority of that judgment; that she also sought a review of the adverse judgment for possession by the Appellate Court, but her appeal was dismissed, a writ of restitution was issued, her furniture was removed from the premises and possession was delivered to Bartlett; that thereafter she forcibly re-entered the premises and has since remained in possession; that her forcible entry was wrongful and Bartlett's action was maintainable under subsection 5 of section 2 of the act in regard to forcible entry and detainer, and if brought under that sub-section the judgment might have become *res judicata* of Mrs. McDonald's right or title under the contract, but nothing appeared of record to show that the suit was so instituted; that the evidence failed to disclose that the question of title, as distinguished from the right of possession, was an issue in the forcible entry and detainer suit or that it was determined on the petition filed in the suit for divorce, but that the judgment rendered in Bartlett's favor in the action of forcible entry and detainer was *res judicata* of Mrs. McDonald's right to possession and could not be attacked in this suit, and for that reason she had no right to the possession of the property.

There appears to be no question that appellant signed the receipt relied upon in the bill of complaint and that all the parties executed the contract set forth in the answer. Appellant testified that when the contract was signed he told appellees that he could not give them a copy of it, because if he did they could by an initial payment of only $50 and the recording of the copy cloud the title to the property, and that to obviate such a result he gave them the receipt. The contract by its terms provided that it should not be

·filed for record until it had been performed, and that it should be placed in escrow and delivered to the purchasers only when all the payments had been made. Immediately after the execution of the contract and the signing of the receipt appellees entered into possession of the property and they filed the receipt for record within three months after it was issued.

In February, 1913, a fire occurred which partially destroyed the house. Appellant had an insurance policy and another had been obtained by appellees without appellant's knowledge. The two insurance companies adjusted the loss at $421.20 and paid that sum. The house was repaired and re-built. The evidence concerning the character of the work done on the house and the application of the money received from the insurance companies is in conflict. According to the testimony of Mrs. McDonald the contractor who made the repairs told her that he would do the work, using second-hand material, for $140 or $150; that she compelled him to stop his work because it was unsatisfactory, and that $160 of the sum paid by the insurance companies was to be applied on the purchase price of the property. Two witnesses who appeared in her behalf testified that they had examined the house in 1918 and estimated the cost of making the repairs in 1913 at $143 to $160. Neither of these witnesses knew the extent of the repairs made nor appeared to have any knowledge of or experience in work of that character. Appellant testified that the contractor agreed with the adjuster for the insurance companies to make the repairs for $421.20; that the work was done and the sum received from those companies was paid to the contractor, and that appellees made no objection to the work nor to the payment made therefor. The contractor corroborated appellant's testimony in respect to the agreement to make the repairs for the sum at which the loss was adjusted and the payment of that sum to him for the work, and he denied that Mrs. McDonald ever ob-

jected to or directed him to cease his work. Both the master and the court found that the sum realized by the adjustment of the fire loss was properly applied in making the repairs to the house, and that the statement rendered by appellant on August 18, 1913, showing a balance of $255.02 still owing to him by appellees on July 18, 1913, five months after the fire, was correct. To make such a finding it was necessary to accept appellant's version of the understanding with reference to the repairs made necessary by the fire and the application of the money received from the insurance companies in settlement of the loss. This finding is amply supported by the evidence, and it follows that appellees were in default when the repairs were made and that appellant was not at that time under any duty or obligation, by the provisions of the contract, to execute the quit-claim deed. Nor did appellees at any subsequent time become entitled to the deed. They discontinued making payments on the contract early in the year 1913. They made no further payment to apply on the purchase price. They paid neither insurance premiums nor taxes since that time, except only the taxes for the year 1919, which amounted to less than $10 and were paid after the bill in this case was filed. On the contrary, appellees apparently neglected to care for the property to such an extent that appellant was required, after the year 1916, to make improvements and repairs on the property required by the health department of the city, at an expense of $203.88. In no respect did appellees after February, 1913, perform the contract on their part.

The contract provided that in case of default in performance by appellees it should, at the option of appellant, be forfeited and determined and that he should have the right to re-enter and take possession of the premises. On July 11, 1916, while appellees were, and for a considerable period had been, in default, appellant addressed to them and Preston, the tenant, a demand for immediate posses-

sion of the property. The demand was served upon Mrs. McDonald and Preston but not on George T. McDonald, because he could not be found. He testified that he was absent from the State from May, 1915, until the year 1918. During that period, as well as when he was present in the jurisdiction, he was charged with the knowledge that the provisions of the contract concerning its forfeiture and determination could be enforced against him, and he could not, by absenting himself from the State, escape the consequences of his default. He invokes the acts of his co-appellee to the extent of their performance of the contract. If those acts inure to his benefit, then, assuming that he was entitled to notice of the forfeiture of the contract, his co-appellee must be considered his agent for such purposes and notice to her would be notice to him. The tenant attorned to the appellant and paid rent to him for nearly two years. Subsequently, in July, 1918, Mrs. McDonald forcibly re-entered the premises, but appellant shortly thereafter recovered a judgment against her for possession of the property. She was dispossessed by virtue of that judgment, and, although later she again forcibly took possession, the judgment is an adjudication denying her right in that respect and is binding upon her. Appellant, exercising a right expressly vested in him by reason of appellees' defaults, forfeited and determined the contract and re-entered the premises.

The question presented is not whether a forfeiture shall be effected by the decree of a court of equity, but whether a forfeiture already declared in the manner prescribed by the parties to the contract shall be set aside and the forfeited contract specifically enforced. Courts of equity recognize the right of competent parties to incorporate forfeiture provisions in their contracts and will respect the rights of such a party who has rightfully declared a forfeiture. (*Lang* v. *Hedenberg,* 277 Ill. 368; *Harper* v.

*Tidholm,* 155 id. 370.) When appellant exercised his right of forfeiture non-performance of the contract on appellees' part had continued for upwards of three years. Neither fraud nor bad faith by appellant was shown. The contract contained a provision that the time of payment should be its essence. There was no waiver of that provision. The facts and circumstances in evidence do not justify the setting aside of the forfeiture, and to do so would, in effect, create a contract different from the one which the parties themselves had made.

Appellees' payments on account of the purchase price, the evidence shows, equaled only a portion of the rental value of the property during their occupancy. The forfeiture of the contract resulted in no injustice to them. It is only on the principle that it is unjust and inequitable to permit a contract to remain unexecuted that a court of equity will grant relief by way of specific performance. (*Wisherd* v. *Bollinger,* 293 Ill. 357; *Thackaberry* v. *Tibbe,* 284 id. 199.) Moreover, one who seeks specifically to enforce a contract for the sale of real estate must prove that he has complied with the terms of the contract, or that he was able, ready and willing to comply but was prevented from doing so by the refusal of the other party to perform, and the proof in such a case must be clear and satisfactory. (*Turn Verein Eiche* v. *Kionka,* 255 Ill. 392; *Bothwell* v. *Schmidt,* 248 id. 586; *Bennett* v. *Burkhalter,* 257 id. 572.) In these respects appellees have failed.

The decree of the superior court of Cook county is reversed and the cause is remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*