(No. 32950.—

HERBERT KINGSLEY *et al.*, Appellees, *vs.* OTTOMAR D. ROEDER *et al.*, Appellants.

*Opinion filed January 20, 1954.*

RYAN & FLOOD, of Chicago, (CHRISTIAN F. THIERBACH, and WARREN HEINDL, of counsel,) for appellants.

FISHER, HASSEN & FISHER, of Chicago, (LEONARD FISHER, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is a direct appeal by defendants, Ottomar D. Roeder and Dorothy Roeder, from a decree of the superior court of Cook County, adopting the findings and recommendations of the master in favor of plaintiffs, Herbert Kingsley and Evelyn Kingsley, and ordering specific performance of a real-estate contract between defendants as vendors and plaintiffs as vendees.

The sole inquiry in this proceeding for specific performance is whether there was an effective forfeiture of the contract by reason of plaintiffs' failure to comply with the terms and conditions of the contract.

From the record it appears that plaintiffs, Herbert Kingsley and his wife, Evelyn Kingsley, entered into an agreement with defendants, Ottomar D. Roeder and Dorothy Roeder, for the purchase of a 1½-acre tract of realty located at 4601 Lake Street, Melrose Park, Illinois. Under

the terms of the contract, the purchase price of $12,000 was payable, $500 down and $100 or more per month, including 4½ per cent interest, until the principal was reduced to $7500 or under, whereupon title was to be conveyed to the plaintiffs, who in turn were to execute and deliver to defendants a mortgage for the balance, payable on the same terms. The contract also contained certain provisions requiring the purchasers to pay taxes and insurance on the premises.

At the time the contract for purchase was entered into, the property was vacant and had not been occupied for over a year. The frame building thereon was first used by the purchasers for light manufacturing, but since a fire in December, 1950, the plaintiffs operated a trailer camp on the premises, with the knowledge and consent of the defendants.

Although the contract did not state the day of the month on which the payments were to be made, from the testimony it was apparently understood that since the contract was made on the 20th, the payments should be paid on that date each month. Nevertheless, plaintiffs made payments irregularly, sometimes not even within the current month, to defendant Ottomar Roeder's mother-in-law, Mrs. Thierbach, who was designated as defendants' agent for payment. All of these delayed installments on the contract were accepted by defendants through March, 1952. Plaintiffs also paid Mrs. Thierbach the sum due on the first installment of the 1950 taxes, but not the second installment, which was payable in September, 1951. Defendants, however, made no request of plaintiffs for this tax payment. Plaintiffs did insure the premises, and the money from the fire loss in December, 1950, was paid by the insurance company to both plaintiffs and defendants. That policy of insurance expired on April 5, 1952, and although plaintiffs claim to have placed a binder on the premises, the evidence is not clear whether the property was immediately

thereafter insured by plaintiffs. Defendants, however, took out insurance on the premises in April, 1952, but did not ask plaintiffs to pay the premiums.

On April 30, 1952, Christian Thierbach, defendants' attorney, who is also the son of defendants' agent for payment, after a title search in which he discovered the unpaid tax installment, prepared for defendants a document titled Notice of Intention, in which plaintiffs were notified that unless their alleged defaults of failure to pay the installments due on March 20 and April 20, 1952, failure to pay the second installment of 1950, and failure to keep the insurance in force, were cured within 30 days from date, the contract would be forfeited. The document was sent by registered mail addressed to plaintiffs at the property in controversy, although at the time Christian Thierbach knew that the plaintiffs did not live there. He did not know where plaintiffs lived, and admittedly did not ask his mother where plaintiffs lived. He did, however, have a conversation with plaintiffs' daughter between April 15, 1952, and April 30, 1952, on the premises, with reference to whether the property was insured, but there was no reference made to defendants' notice of intention to declare a forfeiture if the alleged defaults were not cured.

The registered document was not received by anyone, and was returned sealed to defendants, who thereby knew that plaintiffs had not received it, and had no actual knowledge of defendants' intention to declare a forfeiture in 30 days unless the alleged defaults were cured. Notwithstanding their lack of knowledge of defendants' notice of intention, plaintiffs nevertheless sent currency-exchange money orders to Mrs. Thierbach for defendants for $100 each as monthly payments on the contract on May 5 and May 22, 1952. These money orders were retained by Mrs. Thierbach, but not cashed. It appears, however, that the May 5 money order was delayed in the dead letter office for several weeks, but was ultimately received by defendants and

Mrs. Thierbach either at the end of May or the first part of June.

Although Christian Thierbach knew of the arrival of at least one of the payments during May, he proceeded nevertheless, without any further communication, or attempt to communicate, with plaintiffs, to prepare a declaration of forfeiture, which was filed on June 1, 1952, in the recorder's office. No copy of this document was sent to plaintiffs. On June 13 defendants made a demand for immediate possession of the premises upon the operator of the trailer camp, with a formal demand dated June 2; and on June 19 a forcible detainer suit was started by defendants in the justice of the peace court. When plaintiffs learned of defendants' intention to enforce strict compliance with the terms of the contract, they immediately cured the alleged defects by paying all taxes due, had additional insurance policies issued, and offered defendants the full amount of the purchase price, which defendants refused. Defendant Ottomar D. Roeder stated that he did not think plaintiffs could get a mortgage for $7500 on the premises, because it was run down. However, he later admitted that the property was now worth between $16,000 and $20,000.

Plaintiffs thereafter instituted this proceeding for specific performance, in which defendants filed a cross complaint claiming irreparable injury. Plaintiffs made a formal tender in court of $2000 in currency to reduce the amount due on the contract to $7500, as provided under its terms, and offered to execute a purchase-money mortgage for the remaining $7500, but defendants refused the tender.

The master made certain findings, and concluded that the contract between plaintiffs and defendants was not forfeited, but in full force and effect, and that tender of performance had been properly made and should be accepted by defendants. He further recommended that a decree be entered enjoining defendants from proceeding with the

forcible detainer suit and ordering them to accept the tender of sufficient amounts to reduce the balance due under the contract to $7500, and then to convey title to plaintiffs and take back a purchase-money mortgage of the $7500 due, as provided in the contract.

Defendants filed certain objections to the report, which were overruled, and the superior court of Cook County entered a decree adopting the recommendations of the master. From this decree defendants have appealed directly to this court, inasmuch as a freehold is involved.

In support of their argument on this appeal that the master's findings were contrary to the manifest weight of the evidence and the law, defendants contend that courts give effect to forfeiture clauses in contracts, and that in the instant case such forfeiture was properly exercised, inasmuch as plaintiffs were in default on the contract, and were committing waste on the premises. They urge further that since the contract was forfeited, plaintiffs could not be entitled to specific performance, and that the equities in this case favored defendants.

Plaintiffs, however, maintain that the evidence fully supports the trial court's findings and decree, which should not be disturbed unless manifestly against the weight of the evidence, and that the right of forfeiture for any possible defaults was waived by the conduct of the parties, and could not be exercised without prior notice of an intention to exercise such right.

In determining the propriety of the decree of the superior court, it is evident that the remedy of specific performance is not a matter of right, and its exercise is within the sound discretion of the court, (*Phelps* v. *Illinois Central Railroad Co.* 63 Ill. 468;) and one who seeks to specifically enforce a contract for the sale of real estate must prove that he has complied with its terms, or was able, ready and willing to comply, but was prevented from doing

so by the other party to the contract. *McDonald* v. *Bartlett*, 324 Ill. 549.

In the instant case defendants urge that there could be no specific performance of the contract, despite plaintiffs tender of performance, inasmuch as the contract was properly declared null and void under the forfeiture clause which provided: "In the event this contract or agreement shall be declared null and void by the Seller on account of any default, breach, or violation by the Purchaser in any of the provisions hereof, the same shall become null and void and be so conclusively determined by the filing by the Seller of a written declaration of forfeiture hereof, in the Recorder's Office of said County." It is established that courts of equity recognize the right of competent parties to incorporate such forfeiture provisions in their contracts, and will recognize the rights of a party who has properly declared a forfeiture. (*McDonald* v. *Bartlett*, 324 Ill. 549; *Lang* v. *Hedenberg*, 277 Ill. 368.) Although a forfeiture will never be allowed in courts of equity except where the right is clearly and unequivocally shown, if the forfeiture were properly declared, any subsequent performance, or offer to perform, however strictly in compliance with the terms and conditions of the agreement would be to no avail. *Monson* v. *Bragdon*, 159 Ill. 61, 65, 67.

In the instant case the declaration of forfeiture is predicated essentially upon certain alleged breaches of the contract by plaintiffs: failure to pay the March and April installments on the contract; failure to pay the second installment of the 1950 taxes, due September, 1951; and failure to insure the premises.

In reply to the allegations of default in payment of the installments on the contract, plaintiffs offered in evidence money orders, sent to Mrs. Thierbach for defendants, dated March 17, May 5, and May 22. Although plaintiff Herbert Kingsley admitted on cross-examination

that the March 17 money order could have been in payment of the February installment, that interpretation was by no means clearly established in the evidence, and the money order could as likely have been in payment of the March installment. There was, however, no payment received in April.

As hereinbefore noted, although the contract stated no date of the month upon which payment was required, it was the apparent understanding of the parties that since the contract was entered on the 20th of the month, payments should be made on that date. However, there is considerable evidence that delayed payments and payments on dates other than the 20th were made practically since the execution of the contract. Defendants' witness, who at one time was manager for plaintiffs of the trailer camp, testified to conversations with Mrs. Thierbach on several occasions, when payments were delayed, and the latter stated that plaintiff Herbert Kingsley had done that a number of times and he always came through with the money.

Moreover, there is no evidence that defendants made demands on plaintiffs for more prompt payment, or ever threatened to rescind the contract for such delays prior to the notice of intention on April 30, so as to indicate to plaintiffs that delays in the March or April payments might be deemed a default. Whether such continued acceptance of delayed payments constitutes a waiver of the provision that time is of the essence is a question of fact. *Fox* v. *Grange,* 261 Ill. 116.

In *Plummer* v. *Worthington,* 321 Ill. 450, where the grantor accepted numerous payments at the convenience of the grantee after they were past due, it was held that he waived the right to declare a forfeiture for failure to make prompt payment, and could resume the right only on specific notice to the grantee of his intention to do so. In *Monson* v. *Bragdon,* 159 Ill. 61, involving a suit for specific performance of a contract and to enjoin an action

of forcible entry and detainer, where the contract, as in the instant case, provided for forfeiture in case of failure to make any payment or perform any covenants, it was held that since the vendor had accepted payments from time to time not made in conformity with the contract, the vendor could not subsequently, without any actual notice to the vendee, declare a forfeiture.

From the foregoing it is evident that the circumstances of the instant case indicate that plaintiffs were lulled into false security whereby strict compliance with the terms of the contract was not demanded. Hence, the payment by plaintiffs of the April 20 installment by the May 5 money order, or, even according to defendants' suggestion, the payment of the March 20 installment by the May 5 payment and the payment of the April 20 installment by the May 22 payment, was not unusual or a sudden deviation in the business dealings between the defendants and the plaintiffs under the contract. Consequently, the master found that there had been no default in making payments under the contract. Even if the delay were deemed a default, the conduct of the parties evidenced an intention to waive the provision that time was of the essence; and while such conduct was not necessarily a permanent waiver of the time requirements, (*Watson* v. *White,* 152 Ill. 364,) nevertheless, under well-established equity rules, there was at least a temporary suspension of the right, which could be restored only by defendants giving a definite and specific notice of intention to that effect. *Monson* v. *Bragdon,* 159 Ill. 61.

Defendants apparently endeavored to give such notice of intention to exercise the forfeiture clause, unless plaintiffs complied strictly with the terms of the contract, by the instrument of April 30, 1952, drafted by Christian Thierbach.

As hereinbefore noted, this document was sent to plaintiffs at the trailer camp although Thierbach knew that

plaintiffs did not live there. He did not know where plaintiffs lived, but admitted at one point in the record that he did not ask his mother, who was defendants' agent for payment, where Kingsley lived, and at another point he claims he asked her and the defendants. That was the extent of his inquiry. Plaintiffs' daughter refused to disclose plaintiffs' whereabouts to Thierbach when questioned about certain insurance information, but Thierbach did not at any time intimate to her that the inquiry was for the purpose of notifying plaintiffs of an intention to forfeit the contract.

Moreover, even after the nondelivery of the registered letter, which was returned to the sender sealed, no further inquiry was made as to plaintiffs whereabouts, nor was any action taken to put plaintiffs on notice during the 30 days that defendants intended to exercise the forfeiture provision if the delays in payments were not cured. The money orders, though not cashed, were not returned. Thus, it is obvious that plaintiffs did not receive the requisite notice in order to restore the defendants' right to declare a forfeiture for failure to make timely payments. *Plummer v. Worthington*, 321 Ill. 450.

Defendants cite the early case of *Chrisman v. Miller*, 21 Ill. 227, where there is some language that it is not necessary to give notice of forfeiture of a contract, in support of their contention that actual notice to plaintiffs was not necessary. Apart from any possible variance in the legal concepts of business law which might have occurred in the intervening 95 years since that opinion was written, it is patent that the facts in that case are clearly distinguishable. The purchaser was not in default for a few weeks at most, as the plaintiffs in the instant case, but had made no payments on the contract for over 2 years before the forfeiture was declared, and several times between October 10, 1851, and March 15, 1853, when the forfeiture was declared, the purchaser was personally notified that unless

"he paid up immediately" the sellers would be obliged to declare the contract forfeited. Furthermore, the notice required is not of the declaration of forfeiture, but of the intention to insist upon prompt payment on pain of forfeiture, where the parties had previously made and accepted delayed payments.

Defendants further argue that even if such notice of intention to forfeit were necessary by reason of any alleged waiver, defendants' conduct constituted a sufficient *bona fide* attempt to give plaintiffs notice. In support of the sufficiency of the notification, defendants cite *Murray* v. *Schlosser*, 44 Ill. 14, where the court held that notice to a man's wife where he was in service overseas was sufficient. In that case the notice was a declaration of forfeiture, not a notice of intention to enforce strict compliance with the contract. Furthermore, the wife was actually informed of the contents of the notice, and from the nature of the circumstance, no other notice could have been given. The distinguishing features of that case are self-evident. In the instant case the facts and circumstances indicate that no diligent inquiry or effort was made to give plaintiffs notice of defendants' intention to declare a forfeiture. Nor did plaintiffs attempt to avoid such notice.

Irrespective of plaintiffs' lack of notice, they made two $100-payments on the contract during the month of May, within the 30 days specified in the notice, which would have cured the installment delays for March and April, or April and May as plaintiffs contend. Although defendants' attorney knew of the receipt by defendants of at least one of the installment payments in May and the fact that plaintiffs did not know of the defendants' intention to declare a forfeiture, he proceeded to have defendants' declaration of forfeiture recorded, apparently relying upon the other defaults.

The master did not find that plaintiffs had defaulted on any of the covenants of the contract, and there is proper

evidence in support thereof. With reference to plaintiffs' failure to pay the second installment of the 1950 taxes, tax bills are ordinarily sent to the title holders of the property, who in this case are the defendants. Plaintiffs gave Mrs. Thierbach, as defendants' agent, the money to pay the first installment, but there was no evidence that defendants ever asked for, or called plaintiffs' attention to, the second installment. When plaintiffs had actual notice that the taxes were owing, plaintiffs paid them immediately.

It is undisputed that plaintiffs originally insured the premises under a policy which expired April 5, 1952, just three weeks before defendants' notice of intention to declare a forfeiture. There is evidence that plaintiffs had an insurance binder placed on the property immediately, and the master who heard the evidence found that plaintiffs did not default in this obligation. Moreover, defendants, upon the expiration of plaintiffs' original policy, proceeded to insure the premises, but for some reason made no demands for the premiums from plaintiffs, which would in any way put plaintiffs on notice of their possible default.

From the foregoing analysis of this cause, it appears that defendants' conduct evidences a studied attempt to take advantage of delays formerly condoned, and delinquencies of short duration in order to exercise the forfeiture provisions. The facts and circumstances herein allegedly justifying the forfeiture are clearly distinguishable from those in *McDonald* v. *Bartlett*, 324 Ill. 549, which is the principal case relied upon by defendants, where a forfeiture was allowed. In that case the contract was entered into in 1909, and payments were made on the contract until 1913, after which the vendees defaulted on the purchase price, the insurance, and the taxes for a period of over three years. One of the purchasers then left the State for a period of two more years, and actual notice was served on the copurchaser. The vendor himself made improvements on the premises from 1916 to 1918, and con-

tinuously paid the taxes. Under those circumstances, the court recognized the forfeiture, and held that the actual notice of forfeiture to the copurchaser, while the other one was out of the State several years, was sufficient.

It is our opinion, therefore, that there were no proper grounds for exercising the forfeiture provisions of the contract in the instant case, and that even if the delays in payment were regarded as a default on the contract, the right to declare a forfeiture for such delays had been temporarily waived, and the requisite notice to effect a forfeiture under those circumstances was not received by plaintiffs. Consequently, the contract was in full force and effect at the time plaintiffs made the tender of performance, as authorized under the contract, and the decree of specific performance was properly entered.

*Decree affirmed.*