2023 IL App (1st) 210837-U

No. 1-21-0837

Order filed June 16, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| RAYMOND SIEGEL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 L 011374 |
| | ) | |
| DAVID S. GALANDAK, | ) | Honorable |
| | ) | James E. Snyder, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Delort and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the circuit court over Mr. Galandak's contentions that the court erred in finding that he defaulted on the settlement agreement and in denying his motion for Rule 137 sanctions.

¶ 2    This case comes before the court following the circuit court's judgment in favor of plaintiff Raymond Siegel against defendant David S. Galandak arising from a contract dispute between the parties. After Mr. Siegel loaned money to Mr. Galandak, and Mr. Galandak failed to repay the debt, Mr. Siegel brought an action for repayment in the circuit court. The parties eventually entered

into a settlement agreement for the repayment of the debt. As part of the agreement, Mr. Galandak would make regular payments to Mr. Siegel over the course of five years and, in exchange, Mr. Galandak would pay less than the entire amount owed. In the event of default, Mr. Galandak would be liable for the original amount owed rather than the reduced, negotiated amount under the settlement agreement.

¶ 3       Several years after entering into the settlement agreement, Mr. Siegel filed a motion to reinstate the case arguing that Mr. Galandak had defaulted on the settlement agreement by making late payments and therefore was required to pay the original amount owed. In his response, Mr. Galandak denied he had missed payments but admitted that he had made late payments. Mr. Galandak maintained that by routinely accepting the late payments without declaring a default, Mr. Siegel waived his right to declare a default. Following an evidentiary hearing, the court found in Mr. Siegel's favor in the amount of $11,210.39, the difference between the original amount of the debt and the reduced amount under the settlement agreement. The court subsequently denied Mr. Galandak's motion to reconsider and his motion for sanctions.

¶ 4       On appeal, Mr. Galandak contends that the circuit court erred in finding that he defaulted on the settlement agreement. He maintains that the agreement did not define what constituted "default" and that Mr. Siegel's repeated acceptance of late payments without objection resulted in a waiver of his right to contend that late payments amounted to a default. Mr. Galandak also asserts that the circuit court erred in denying his motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) because Mr. Siegel filed an intentionally misleading motion and because Mr. Siegel's attorney prepared a proposed order with the incorrect judgment amount prompting the court to later enter an amended order.

¶ 5                                    I. BACKGROUND

¶ 6    The record shows that in October 2014 Mr. Siegel filed a complaint alleging that he loaned Mr. Galandak money to pay the real estate taxes on a business that Mr. Galandak owned. Mr. Siegel alleged that Mr. Galandak had failed to repay the amount borrowed and owed him $51,949.67. Following a settlement conference in January 2016 the parties entered into an agreement that permitted Mr. Galandak to repay a lesser amount in exchange for a structured payment plan, plus interest. The settlement agreement provided that Mr. Galandak would pay Mr. Siegel $40,000 plus 7% interest over five years with payments to be made on the first of each month beginning on March 1, 2016. The agreement further provided that in the event of a default, Mr. Galandak would be liable for $51,949.67. The circuit court retained jurisdiction over the settlement agreement.[1]

¶ 7    On March 16, 2020, Mr. Siegel filed a "Motion to Reinstate Case and for Entry of Judgment." In the motion, Mr. Seigel alleged that Mr. Galandak failed to make payments under the terms of the settlement agreement and missed the scheduled payments for January 1, 2020, and February 1, 2020. Mr. Siegel maintained that Mr. Galandak defaulted on the settlement agreement and was therefore liable for the original debt.

¶ 8    Mr. Siegel refiled his motion on July 21, 2020, alleging that his previous motion was stayed due to the COVID-19 Pandemic. In his refiled motion, Mr. Siegel added that in addition to missing payments on January 1, 2020, and February 1, 2020, Mr. Galandak also missed payments on December 1, 2019, March 1, 2020, and April 1, 2020. Mr. Siegel acknowledged that Mr. Galandak

---

[1]A trial court possesses the power to retain jurisdiction to enforce a settlement agreement. *Board of Trustees of Harvey Police Pension Fund v. City of Harvey*, 2017 IL App (1st) 153095, ¶ 18.

sent him a check in March 2020, which he applied to the December 2019 payment, and that Mr. Galandak sent payments for June 2020 and July 2020. Mr. Siegel sought a judgment in the amount of $20,032.98, which represented the original principal of $51,949.67, plus interest, less payments made by Mr. Galandak.

¶ 9    Mr. Galandak filed a response to the motion in which he alleged that the remaining balance due on the debt was $5,000 as he had made every payment through August 2020. Mr. Galandak asserted that he did send payments in March and April 2020, but later learned that those payments were never received. He retransmitted those payments in January 2021 along with the February 2021 payment. Mr. Galandak acknowledged that some of his payments were late under the terms of the settlement agreement, but contended that Mr. Siegel's acceptance of the late payments demonstrated that he did not default on the terms of the agreement and "the acceptance by the Plaintiff [of the late payments] was a waiver of any default claim if he in fact ever had such a claim."

¶ 10    Mr. Galandak noted that in the past Mr. Siegel sent him letters after late payments threatening legal action, but contended that Mr. Siegel waived any claim of default by accepting the payments without bringing legal action. He maintained that although he was late on some payments, he made every payment due and therefore was not in default.

¶ 11    The parties' briefs reflect that the court held an evidentiary hearing on the motion on March 3, 2021, but there is no report of proceedings from said hearing in the record. Mr. Siegel maintains that he introduced into evidence at the hearing two letters that he sent to Mr. Galandak concerning the late payments and a table showing when certain payments were due, when they were received, and the total number of days late. Following the hearing, the court entered an order finding in favor

of Mr. Siegel in the amount of $20,032.98. One week later, on March 10, 2021, the court entered an amended order finding in favor of Mr. Siegel in the amount of $11,210.39.

¶ 12    Following the court's amended order, Mr. Galandak filed a combined motion to reconsider and for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). In his motion, Mr. Galandak contended that after the parties entered into the settlement agreement, Mr. Siegel sent him an amortization schedule with payment dates and amounts for the five-year payment period. Mr. Galandak maintained that this schedule was not part of the settlement agreement, but he nonetheless made payments in accordance with the schedule. He again acknowledged that some of the payments were made late, but emphasized that he made all of the payments and Mr. Siegel accepted those payments. Mr. Galandak asserted that under the terms of the settlement agreement, there was no penalty for late payments, and he could only default on the agreement if he defaulted on his payments. Mr. Galandak pointed out that the settlement agreement did not define the term default or provide for a "cure period." Mr. Galandak maintained that he was "lulled into a false [sense of] security" where Mr. Siegel continued to accept late payments without declaring that he was in default.

¶ 13    With regard to Rule 137 sanctions, Mr. Galandak contended that Mr. Siegel attempted to mislead the court in his motion to reinstate the case by asking for an amount of damages that was more than he was entitled to under the terms of the settlement agreement in the event of a default. Mr. Galandak noted that Mr. Siegel's attorney acknowledged this error when the inflated amount was included in the court's March 3, 2021, judgment, which later had to be amended to reflect the correct amount due. Mr. Galandak maintained that he incurred additional attorney fees and expenses on account of this violation of Rule 137.

¶ 14     The court summarily denied Mr. Galandak's motion to reconsider on June 21, 2021. Mr. Galandak filed a timely notice of appeal on July 16, 2021. We find that we have jurisdiction to consider this appeal pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. Jul. 1, 2017).

¶ 15                              II. ANALYSIS

¶ 16     On appeal, Mr. Galandak contends that the court erred in finding that he defaulted and therefore breached the terms of the settlement agreement. He maintains that the agreement did not define what constituted a breach of the terms and Mr. Siegel's repeated acceptance of late payments represented a waiver of his right to assert that future late payments constituted a default. Mr. Galandak also contends that the court erred in denying his request for Rule 137 sanctions where Mr. Siegel attempted to mislead the court as to the amount owed in the event of a breach of the settlement agreement.

¶ 17                          A. Standard of Review

¶ 18     "[A] settlement agreement is a contract, and construction and enforcement of settlement agreements are governed by principles of contract law." *Law Offices of Colleen M. McLaughlin v. First Stat Financial Corp.*, 2011 IL App (1st) 101849, ¶ 18. Therefore, unless the settlement agreement is ambiguous, we determine the intent of the parties from the plain and ordinary meaning of the language of the contract. *Id.* "A settlement agreement is ambiguous if it is susceptible to more than one interpretation or if its terms are obscure in meaning through indefiniteness of expression." *Id.* (citing *In re Marriage of Lehr*, 217 Ill. App. 3d 929, 934-35 (1991)). We will not find that contract language is ambiguous solely because the parties disagree as to its meaning. *Id.*

¶ 19    At the outset, we observe the record shows that the court held an evidentiary hearing on Mr. Siegel's motion on March 3, 2021, but there is no report of proceedings from that hearing included in the record filed on appeal. It was Mr. Galandak's burden, as the appellant, to provide a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "In the absence of such a record the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Cannon v. William Chevrolet/Geo, Inc.*, 341 Ill. App. 3d 674, 681 (2003) (citing *Foutch*, 99 Ill. 2d at 392). Any doubts that may arise from the incompleteness of the record will be resolved against Mr. Galandak. *In re Linda B.*, 2017 IL 119392, ¶ 43.

¶ 20                              B. The Settlement Agreement

¶ 21    The settlement agreement between the parties is set forth in its entirety in a handwritten order entered by the circuit court on January 21, 2016. That order provides in pertinent part that:

> "(1) David Galandak shall pay Raymond Siegel forty thousand dollars ($40,000) over five (5) years with payments to begin March 1, 2016[,] and be made by the 1st of each month until paid in full. The interest rate is seven (7) percent. Payments are interest only the first year. Payments for years 2, 3, 4, 5 are principal and interest.
>
>                              ***
>
> (5) If David Galandak defaults on payments, judgment will be entered in the amount of $51,949.67."

Mr. Siegel's motion to reinstate the case alleged that Mr. Galandak had defaulted on the agreement by failing to make certain payments. Mr. Siegel later acknowledged that Mr. Galandak had made

all of the payments due, but had nonetheless defaulted because he failed to make each payment on the first of each month as set forth in the settlement agreement.

¶ 22    Because the settlement agreement did not define the term "default," both parties turned to Black's Law Dictionary to illustrate the "plain and ordinary" meaning of that term. *Law Offices of Colleen M. McLaughlin*, 2011 IL App (1st) 101849, ¶ 18. Black's Law Dictionary defines default as: "The omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." Black's Law Dictionary (11th ed. 2019). Both parties agree on this definition, but disagree as to how it applies in this case. Mr. Siegel maintains that Mr. Galandak defaulted because he failed to perform his contractual duty to make timely payments under the settlement agreement. Mr. Galandak responds that he did not default because he did not fail to pay.

¶ 23    The settlement agreement here explicitly provides that Mr. Galandak's payments pursuant to the agreement were due on the first of each month. Black's Law Dictionary provides that a party defaults where they fail to "pay a debt *when due*." (Emphasis added.) *Id.* Mr. Galandak's payments were due on the first of each month, and he concedes that he failed to make timely payments. We find no ambiguity in the terms of the agreement and find that Mr. Galandak was therefore in default.

¶ 24    Mr. Galandak maintains, however, that his late payments did not constitute a default under the settlement agreement because Mr. Siegel waived his right to declare default based on late payment by routinely accepting them. Mr. Galandak asserts that due to these past late payments, he believed that the parties had mutually agreed to a "cure period" whereby Mr. Galandak could make late payments and not default. Mr. Siegel responds that he did not accept the late payments

with the intention to waive his right to declare default, but did so under the general duty to mitigate his damages.

¶ 25 "Waiver is the express or implied voluntary and intentional relinquishment of a known and existing right." *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 223 (2001). In this case, Mr. Galandak is asserting that Mr. Siegel implicitly waived his right to timely payments under the terms of the settlement agreement by accepting late payments without objection and without declaring default. "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 105 (1991). " 'An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an *intention* to waive a right or where his conduct is inconsistent with any other intention than to waive it.' " (Emphasis added.) *Id.* (quoting *Kane v. American National Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052 (1974)).

¶ 26 We first observe that Mr. Siegel did not repeatedly accept late payments without objection as Mr. Galandak suggests. On December 22, 2017, Mr. Siegel's attorney sent a letter to Mr. Galandak's attorney informing him that Mr. Galandak had not been making payments on time. In that letter, Mr. Siegel noted that he received a principal payment on April 1, 2017, but did not receive the interest payment until April 8. Mr. Siegel also represented that he received a payment on November 2, and another on December 6, that was postmarked on December 4. Mr. Siegel's attorney encouraged Mr. Galandak to "avoid acceleration of the debt and an increase in the amount owed" and to timely send the payments by certified mail. He continued: "We are placing your

client [on] notice through you that if the payments aren't timely made, we will move forward against him."

¶ 27    Mr. Siegel's attorney sent Mr. Galandak's attorney another letter on September 17, 2019. In this letter, Mr. Siegel's attorney noted that Mr. Siegel had received a voicemail from Mr. Galandak where he stated that he was unable to make the payment for September 2019, but was expecting to receive money from another settlement and needed more time. Mr. Siegel's attorney noted that Mr. Galandak was "in default for failing to make the September 2019 monthly payment" and the "unilateral extension" was unacceptable. Mr. Siegel's attorney represented that because Mr. Galandak was, by his own admission, in default under the terms of the settlement, "the larger amount is now due."

¶ 28    An exhibit included in the record that Mr. Siegel represents was introduced at the evidentiary hearing shows that after September 2019, Mr. Galandak was late on the December 2019, January 2020, February 2020, March 2020, and April 2020 payments. Three of those payments were received in March 2020—one on March 4, and two on March 27—but Mr. Siegel did not receive the March and April 2020 payments until January 2021. As noted, Mr. Siegel filed his initial motion to reinstate the case on March 16, 2020, wherein he declared that Mr. Galandak was in default. Thus, at the time Mr. Siegel filed the motion, he had accepted one late interest payment in April 2017 that was seven days late, a payment that was one day late in November 2017, and a payment that was sent three days late in December 2017 and received five days late. It is not clear from the record when a payment for September 2019 was sent and whether Mr. Siegel accepted that payment. The status of the October and November 2019 payments is also unclear, but it is reasonable to assume, based on the fact that they are not included in the exhibit

or mentioned in either of the motions to reinstate the case, that those payments were timely made. Mr. Siegel accepted a payment on March 4, 2020, that he applied to the December 2019 payment, noting the payment as more than 90 days late. Twelve days later, Mr. Siegel filed his motion to reinstate the case.

¶ 29    Mr. Galandak asserts that the letters and subsequent acceptance of late payments by Mr. Siegel actually support his position that Mr. Siegel waived his right to prompt payments and to declare default because, despite sending the letters, Mr. Siegel never accelerated the debt or declared that Mr. Galandak was in default, and continued to accept late payments. He also maintains that the exhibit Mr. Siegel introduced further illustrates his acceptance of late payments without declaring Mr. Galandak in default for late payments.

¶ 30    Mr. Galandak is correct that a party may waive its right to timely payments by accepting late payments. *Allabastro v. Wheaton National Bank*, 77 Ill. App. 3d 359, 365 (1990). However, a party can reestablish strict compliance with the contract terms by giving definite and written notice of the intention to require strict compliance. *Id.* at 366. That was precisely the purpose of the September 2019 letter. Although Mr. Siegel may have acquiesced to the late payments referenced in the December 2017 letter, the September 2019 letter unequivocally stated Mr. Siegel's intention to enforce the first-of-the-month due date outlined in the settlement agreement. The letter flatly states that Mr. Galandak's "unilateral extension" was unacceptable and that Mr. Siegel considered Mr. Galandak in default for his late payment. After this letter, Mr. Galandak again missed payment due dates in December 2019, January 2020, and February 2020, and Mr. Siegel filed his motion the following month.

¶ 31    In sum, in September 2019, Mr. Siegel clearly and unequivocally stated his intent to enforce the first-of-the-month payment due date in the settlement agreement. Thereafter, Mr. Galandak missed payments causing Mr. Siegel to file the motion seeking an order finding Mr. Galandak in default under the settlement agreement. We therefore find that even if Mr. Siegel waived his right to prompt payments by accepting late payments before September 2019, this letter reestablished strict compliance with the settlement agreement, which Mr. Galandak breached by continuing to make late payments. *Allabastro*, 77 Ill. App. 3d at 365.

¶ 32    Under these circumstances, we find the authority Mr. Galandak relies on distinguishable. In *Kingsley v. Roeder*, 2 Ill. 2d 131, 133 (1954), the contract did not provide a day of the month the payments were to be made, although both parties testified that payments should be paid on the 20th of each month because that was the date the contract was entered into. Nonetheless, from the outset of the contract, the plaintiffs made payments "irregularly," sometimes not even in the same month that the payments were due, and the defendants regularly accepted those payments. *Id.* The defendants later learned that the plaintiffs had unpaid real estate tax installments based on their late payments and prepared a letter to the plaintiffs notifying them that unless their defaults for failure to pay the tax installments were cured, the contract would be forfeited. *Id.* at 134. However, the defendants' attorney, who sent the letter, did not know where the plaintiffs lived and the letter was eventually returned to the defendants undelivered. *Id.* The court found that by accepting the irregular payments and never informing the plaintiffs of their intention to demand strict compliance with the terms of the contract, the defendants had "lulled" the plaintiffs into a "false security." *Id.* at 139. The court determined that the defendants' conduct was not necessarily a permanent waiver of their right to prompt payments under the contract, but "there was at least a temporary suspension

of the right, which could be restored only by defendants giving a definite and specific notice of intention to that effect." *Id.* The court noted that the letter the defendants sent to the plaintiffs did not serve as notice of the intention to demand strict compliance with the contract terms because the defendants knew that the plaintiffs never received that letter. *Id.* The circumstances in *Kingsley* are therefore distinguishable where Mr. Galandak here acknowledges that he received Mr. Siegel's letter demanding strict compliance in September 2019.

¶ 33   Similarly, in *Foundation Property Investments, LLC v. CTP, LLC*, 37 Kan. App. 2d 890 (2007), *aff'd*, 285 Kan. 597 (2008), a decision from the Court of Appeals of Kansas, the court found that by accepting late payments for nine straight months, the plaintiff waived the right to accelerate the debt based on late payments without notice that it was demanding future strict compliance with the terms of the contract. *Id.* at 897-899. Unlike Mr. Siegel here, the plaintiff in *Foundation Property* did not send the defendant notice of its intention to reestablish strict compliance with the contract terms.

¶ 34   Finally, *Tadros v. Kuzmak*, 277 Ill. App. 3d 301 (1995), involved a contract that included a specific forfeiture option. The court noted that in order to terminate the agreement and declare forfeiture, the vendor was required to strictly comply with the terms of the contract. *Id.* at 306. The court found that the defendants waived their right to declare forfeiture by accepting a late payment and thereby failing to strictly comply with the terms of the agreement and acting in a manner that was inconsistent with the intent to exercise the right of forfeiture. *Id. Tadros* is distinguishable because the settlement agreement in the case at bar did not contain the same strict compliance and forfeiture provisions.

¶ 35    Accordingly, we find that the court did not err in finding that Mr. Galandak was in default under the settlement agreement and in enforcing the default provision which required Mr. Galandak to pay the original debt of $51,949.67.

¶ 36                              C. Rule 137 Sanctions

¶ 37    Mr. Galandak next contends that the court erred in denying his motion for sanctions pursuant to Supreme Court Rule 137 (eff. Jan. 1, 2018). Mr. Galandak maintains that portions of the motion to reinstate the case were intentionally misleading and contained complex calculations there were intended to confuse the court. Mr. Galandak also contends that Mr. Siegel's attorney prepared a proposed order for the court's signature that intentionally stated the wrong amount due on the judgment, necessitating an amended order to correct the error.

¶ 38    Supreme Court Rule 137 provides, in pertinent part:

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading,

motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018)

"The purpose of Rule 137 is to prevent parties from abusing the judicial process by imposing sanctions on litigants who file vexatious and harassing actions based upon unsupported allegations of fact or law." *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). The party seeking sanctions bears the burden of demonstrating that the opposing litigant made untrue and false allegations without reasonable cause. *Id.* We will not overturn the circuit court's ruling on Rule 137 sanctions absent an abuse of discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). We will find that a circuit court has abused its discretion where no reasonable person would take the view adopted by the court. *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 1001 (1996).

¶ 39    Here, the trial court did not state on the record its basis for denying the motion for sanctions. Nonetheless, a review of the record illustrates that sanctions were not warranted in this case. First, Mr. Galandak identifies a specific paragraph, paragraph 12, of Mr. Siegel's initial motion to reinstate the case that he maintains was intentionally misleading. Mr. Galandak asserts that Mr. Siegel restated the paragraph in the refiled motion to reinstate the case and revised the paragraph to be even more confusing. A review of the motion and the identified paragraph, however, do not show the intentional deception that Mr. Galandak suggests. Instead, the paragraph outlines Mr. Siegel's calculation of the amount of damages owed based on Mr. Galandak's default. In the refiled motion, Mr. Siegel sought to recover all of the amounts unpaid as of July 2020, which Mr. Siegel calculated as $20,032.98. This amount was based on Mr. Galandak's missed payments and the capitalization of the interest that occurred. In essence, Mr. Siegel detailed each month beginning

in December 2019 and ending in July 2020 and noting whether he received a payment that month. If he did not receive a payment, Mr. Siegel calculated the amount of principal due at the time and added the missed payment plus interest to the balance. If Mr. Siegel did receive a payment that month, for instance in April 2020, Mr. Siegel credited that amount against the running principal calculation and applied it to the total amount owed.

¶ 40    Although Mr. Galandak asserts that the motion sought an inflated amount due because it did not credit him for all of the payments made, Mr. Siegel noted that the motion listed the payments that were outstanding at the time the motion was filed, but acknowledged that Mr. Galandak later made additional payments, which reduced the amount due. Even accepting Mr. Galandak's suggestion that this pleading is confusing, it could hardly be said to be "vexatious and harassing" and without a legal or factual basis. Accordingly, we find no abuse of discretion based on the court's decision to deny sanctions based on this pleading.

¶ 41    Finally, we recognize that the March 3, 2021, judgment order lists a judgment amount of $20,032.98, the exact amount Mr. Siegel sought in his refiled motion. Mr. Siegel maintains that the court awarded this amount following the evidentiary hearing based on the amount requested in his motion, but the court mistakenly did not credit Mr. Galandak for payments he made during the pendency of the proceedings. He asserts that it was his attorney who brought the error to the attention of the trial court, resulting in the amended order. Mr. Galandak responds that Mr. Siegel's attorney drafted the erroneous order and his attorney first brought the error to the attention of Mr. Siegel's attorney, rather than Mr. Siegel voluntarily informing the trial court of the error.

¶ 42    First, there is no indication in the record that Mr. Siegel's attorney drafted the March 3, 2021, order. The order is signed by the trial court and there is no notation on the order that it was

prepared by either attorney. Notably, some of the other orders in the record do indicate they were prepared by one of the attorneys. For instance, an agreed order entered February 19, 2021, includes a notation that it was prepared by Mr. Galandak's attorney and signed by the trial court, and an agreed order from August 12, 2020, contains the same notation for Mr. Siegel's attorney.

¶ 43 The record also contains a series of emails between Mr. Siegel's attorney, Mr. Galandak's attorney, and the trial judge's court coordinator. The first email in the series is from Mr. Siegel's attorney on March 5 who states that Mr. Siegel believed that the order of March 3, 2021, should be amended "[i]n fairness" to Mr. Galandak. Mr. Siegel's attorney noted that although the amount awarded was based on the amount sought in the refiled motion to reinstate the case, the amount did not credit Mr. Galandak for payments he made while the proceedings were pending. Mr. Siegel's attorney asked for a revised judgment of $11,210.39, and noted that: "Opposing counsel and I are in agreement with this amount." There is no indication in the record that Mr. Siegel's request for an amended order was based on concerns raised by Mr. Galandak.

¶ 44 In any event, Rule 137 by its very terms applies to pleadings, motions and "other documents" that are signed by an attorney and therefore does not authorize sanctions for all violations of court rules and acts of misconduct. *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 15 (2009). "Because Rule 137 is penal in nature, it must be strictly construed." *Id.* Here, the March 3, 2021, judgment order was not a pleading or motion and was not signed by Mr. Siegel's attorney as required by the rule. Therefore, even assuming Mr. Galandak's allegations are true, the improper preparation of that order by Mr. Siegel's attorney is not sanctionable conduct under Rule 137. Accordingly, we find no abuse of discretion based on the trial court's denial of sanctions.

¶ 45                                     III. CONCLUSION

¶ 46    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 47    Affirmed.