(No. 17442.—Reversed and remanded.)
GODFREY JOHNSON, Appellee, *vs.* IDA O. CROUCH *et al.*—
(ANDREW ROSENBERGER *et al.* Appellants.)

*Opinion filed April 20, 1927—Rehearing denied June 8, 1927.*

1. SPECIFIC PERFORMANCE—*when general provision for service of notices applies to all provisions of contract.* If, under a contract which contains a general provision concerning the service of notices, service upon the person as distinguished from service by mail is not required in one situation, it cannot, in the absence of a specific requirement to that effect, be necessary in another under the same contract.

2. SAME—*when mailing notices of termination of a contract is sufficient.* While a statutory provision for service of notice generally requires personal service, yet a provision for serving notices which parties have inserted in a contract for their own convenience will not be strictly construed, and where there is a general provision that all notices required under the contract shall be in writing signed by or on behalf of the party giving the notice and may be served either upon the other party or his agent, notices of the termination of the contract are sufficient when sent by mail by an attorney for the party giving the notices although there was a slight error in the addressee's street number, where the evidence tends to show that the notices were received.

3. SAME—*when party does not avoid forfeiture by redeeming from foreclosure sale.* Where a person has ceased to have an interest under a contract by reason of forfeiture he thereafter deals with the subject matter as a stranger; and a vendee who in his contract has assumed the payment of a mortgage on the property does not avoid his forfeiture of the contract by redeeming from foreclosure of the mortgage several years after the forfeiture was rightly declared and the contract terminated because of his default, especially where his failure to discharge the mortgage resulted in its foreclosure. ·

4. SAME—*equity will give effect to a properly declared forfeiture.* Where a forfeiture has been declared in the manner prescribed by the parties to a contract a court of equity will not ignore their action and make another contract for them but will give effect to the existing contract.

5. SAME—*improvements must be of a lasting character to warrant specific performance on that ground.* Improvements, to afford independent ground for specific performance, must be of such valu-

able and permanent character that the position of the party making them is so changed that the court will be warranted in rendering a decree.

6. SAME—*complainant must show full performance on his part.* One seeking specific performance of a contract for a conveyance must show that he has performed all the terms and conditions of the contract on his part, or that he was able, ready and willing to perform but was prevented from doing so by the act of the other party.

APPEAL from the Circuit Court of Lake county; the Hon. E. D. REYNOLDS, Judge, presiding.

ALBERT L. HALL, and MINARD E. HULSE, for appellants.

ELA, GROVER & MARCH, (JUSTIN K. ORVIS, and CHARLES C. BOMBAUGH, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Ida O. Crouch and Charles P. Crouch, her husband, entered into a contract dated January 29, 1912, for the sale and conveyance to Godfrey Johnson of a part of lot 20 of Marble & Converse's subdivision in the village of Fox Lake, in Lake county. The price, $3600, it was agreed, should be paid as follows: $375 in cash, $725 in monthly installments, fourteen of $50 each and a final one of $25, and the balance of $2500 by the assumption of an existing mortgage for that sum, with the interest thereon. The contract provided (*a*) that, upon payment of the purchase price, conveyance of a merchantable title to the property should be made by general warranty deed, subject to current taxes, installments of special assessments maturing thereafter, and a lease expiring February 1, 1913, with an option in the tenant to extend it for two years; (*b*) that the purchaser furnish an abstract and specify his objections to the title in writing, and if the objections should not be cured within

a reasonable time, that the purchaser, at his election, upon notice, might terminate the contract or take the title as it stood, and that in default of such notice of election to perform, within the time limited, he should be deemed to have abandoned his claim upon the premises; (c) that upon the purchaser's failure to perform the contract promptly as specified it should become void, and that time was of the essence of the contract; (d) that if the purchaser failed to perform, or elected not to perform the contract as specified, he should be released from further liability upon it, and the vendors were authorized to retain the payments theretofore made in satisfaction of their damages; (e) that in case of non-performance by the purchaser the vendors might terminate the contract by giving him sixty days' notice in writing of such termination; and (f) that the notices required to be given should be construed to mean notices in writing signed by or on behalf of the party giving the notice and might be served either upon the other party or his agent.

Godfrey Johnson on November 29, 1920, filed his bill in the circuit court of Lake county against Ida O. Ure, (formerly Crouch,) Charles P. Crouch, Converse Marble, Minnie Rosenberger and Andrew Rosenberger for the specific performance of the foregoing contract and the confirmation of the title to the property in him. He alleged in the bill that he was in possession of the property, that he had completely performed the contract on his part, and that conveyances of the property had been made to the defendants, successively, with knowledge of his rights. The defendants by their answer denied that the complainant had possession of the property, that he had performed the contract, or that the successive grantees under Ida O. Crouch took title with notice of the contract or of the complainant's possession. They averred that the contract had been forfeited on or about May 10, 1914, and that Minnie Rosenberger by *mesne* conveyances had acquired and owned

the legal title to and the equitable interest in the property free from any claims of the complainant, and they denied that the complainant was entitled to the relief demanded. Minnie Rosenberger filed a cross-bill on April 5, 1921, to which the complainant interposed a demurrer. Subsequently, on May 10, 1922, pursuant to leave granted, the defendants filed an amended and supplemental answer, which, in addition to the averments of the original answer, averred the complainant's default in the payment of taxes after the year 1912, payment of these taxes by the defendants, and *laches* on the complainant's part in the prosecution of his suit. A replication to the answer was filed. The cause on the bill and answer was referred to a special master in chancery to take and report the evidence with his conclusions thereon. The master reported that the complainant had paid in excess of the purchase price and recommended a decree in his favor. After the report had been filed, Minnie Rosenberger, one of the defendants, died intestate, her death was suggested of record, and Andrew Rosenberger and Willis J. Simms, her only heirs, were substituted in her stead. The findings of the master, with a single exception, were approved, and a decree was rendered on December 11, 1925, enjoining the defendants from asserting any claim, right or title to the property, directing a conveyance thereof to the complainant, sustaining the demurrer to the cross-bill and dismissing the cross-bill "for want of equity and want of prosecution." From that decree Andrew Rosenberger and Willis J. Simms prosecute this appeal.

The parcel of land described in the contract was acquired by Ida O. Crouch on March 20, 1909. She was divorced from her husband, Charles P. Crouch, some time prior to March 12, 1914. On that day she conveyed the property to her former husband, the deed was recorded two days later, and he held the title until October 21, 1915, when by a quit-claim deed he re-conveyed it to her as Ida

O. Ure, she in the meantime having become the wife of
A. C. Ure. This deed was not recorded until October 10,
1919. Mrs. Ure and her husband on October 16, 1919,
by a quit-claim deed conveyed the property to Converse
Marble, and this deed was recorded on October 22, 1919.
Marble and his wife conveyed the property to Minnie and
Andrew Rosenberger by deed dated August 17, 1920, and
recorded October 4, 1920. By a quit-claim deed dated Feb-
ruary 21 and recorded February 23, 1921, Rosenberger and
his wife conveyed the property to Minnie Rosenberger.

On March 10, 1914, a written notice in the form of a
letter signed by William T. Nelson, a lawyer, was addressed
to the appellee at 447 North Clark street, Chicago, stating
that he had made default in the performance of the con-
tract, and that unless he performed the contract on his part
Ida O. Crouch and Charles P. Crouch, the vendors, would,
in accordance with its provisions, forfeit and terminate it
upon the expiration of sixty days. Appellee's Chicago ad-
dress was 443 North Clark street. On May 3, 1914, a let-
ter demanding immediate possession of the property, signed
by Charles P. Crouch, was addressed to appellee at Fox
Lake. On May 10, 1914, another notice, in the form of
a letter signed by Ida O. and Charles P. Crouch, by Wil-
liam T. Nelson, their attorney, was addressed to appellee
at 447 North Clark street, stating that because of his de-
fault in performance, and pursuant to the notice sent him
on March 10, the contract was forfeited and terminated.
This demand and these notices were sent to appellee by
registered mail.

The mortgage mentioned in the contract of sale was
foreclosed and the property was sold at a master's sale on
October 6, 1919, to John W. Hart and Converse Marble
and a certificate of sale was issued to them. Ida O. Ure
(formerly Crouch) was not a party to the foreclosure suit.
On August 17, 1920, Hart assigned his interest in the cer-
tificate to Marble, who, in turn, on the same day transferred

the certificate to Minnie and Andrew Rosenberger. Appellee redeemed the property from the master's sale by the payment of $3138.56 on October 2, 1920, and received a certificate of redemption, which he recorded.

The first contention of appellants is that appellee failed to show performance of the contract on his part. Appellee entered into possession of the property under a prior contract and made three payments on account of that contract,—an initial one of $100 and later two in the year 1911, one of $50 and the other of $25. By the contract of January 29, 1912, here involved, the vendors acknowledged the receipt of $375 as earnest money, to be applied on the purchase price. Mrs. Ure, formerly Ida O. Crouch, one of the vendors, testified that the three items, aggregating $175, credited upon the prior contract constituted a part of the $375, payment of which was recited in the subsequent contract. Charles P. Crouch testified that his former wife owned the property when the contract of sale was consummated and that no payment on account of that contract was ever made to him. The testimony and exhibits introduced on behalf of appellants show subsequent payments on the contract amounting to $325, as follows: In 1912, March, $50, April, $50, October, $50, and December, $25; in 1913, January, $25, March, $25, April, $25, and September, $50; and in January, 1914, $25. These payments, added to $200, make a total of $525, which Mrs. Ure testified was all she had received on the contract to the end of January, 1914, more than eight months after the final payment became due by the provisions of the contract.

Payments on account of the contract claimed by appellee, and which he insists show complete performance on his part, are: The acknowledgment of $375 by the contract; receipts from Mrs. Crouch, one dated February 2, 1912, for $275, another dated March 17, 1912, for $50, a third dated March 9, 1913, for $25, a fourth dated September 28, 1913, for $50, and one dated January 1, 1914, for $25; checks to

Mrs. Crouch, one dated December 22, 1912, for $25, and another dated January 6, 1913, for $25; a receipt from Charles P. Crouch dated September 9, 1915, for $200; a freight receipt dated February 7, 1912, for $11.65; and two credits, one of $200 for a boat and the other of $100 for rent collected by Converse Marble. The aggregate of these items, if properly applicable to the contract, is $1361.65, or a sum in excess of that required to be paid, as found by the master. Appellee relies upon the recitation in the contract as sufficient evidence of the payment of $375 as an independent transaction. Other evidence of the payment of that sum at a given time is lacking. All the evidence is to the effect that $200, and not $375, was the sum paid at or about the time of the execution of the second contract. By a preponderance of the evidence the receipt for $275, which was dated four days after the execution of the contract, consists of items included in the initial payment acknowledged by the contract. The receipt from Crouch makes no reference to the contract and it was given after the contract had been terminated. It does not appear how the collection of rent by Marble would entitle appellee to a credit on the purchase price. It was not shown that the receipt from Crouch, the freight receipt and the credits claimed for the boat and for rent paid to Marble had any connection with the real estate contract. On the whole evidence appellee was in default at and prior to the time the final payment on the contract became due and payable. He paid $75 in two installments since that time, but he was still in arrears when these payments were made, and he paid nothing after January, 1914. He was in default when the contract was terminated on May 10, 1914.

It is contended that the notices of forfeiture were not in proper form and were not served upon the person; that in these respects the provisions of the contract were not observed, and for these reasons the notices were ineffectual to terminate the contract. Both notices were in writing.

The first one was signed by Nelson, the attorney, on his professional stationery.  It referred to the contract, named the vendors, described the property, called attention to the default in performance, stated the provisions concerning forfeiture, and gave notice of the termination of the contract upon the expiration of the specified period.  Appellee had failed to perform the contract on his part and knew that it was subject to forfeiture on written notice.  The notice came from an attorney, and the appellee understood that the attorney in sending it represented the vendors.  The second notice was signed by the vendors by the attorney, and expressly stated the relationship that existed between the vendors and himself.

The contract provides that the notices required by it "may be served either upon the other party or his agent." Notice of defects in the title, notice of the election of the purchaser to rescind the contract, notice to take the title as it stands and notice of the termination of the contract are required.  From a consideration of the several provisions of the contract it does not appear that service of each of these notices upon the party in person was contemplated. The general provision in regard to notices applies to all notices to be served pursuant to the contract.  If, under a contract which contains a general provision concerning the service of notices, service upon the person as distinguished from service by mail is not required in one situation, it cannot, in the absence of a specific requirement to that effect, be necessary in another under the same contract. Where a statute provides for notice but no provision for substituted service is made, it has been held that personal service is required and notice by mail is not sufficient.  (*Mc-Dermott* v. *Board of Police*, 25 Barb. 635; *Haj* v. *American Bottle Co.* 261 Ill. 362.)  A strict construction, however, of provisions which the parties have inserted in a contract for their own convenience and which do not appear to be mandatory is not required.  (*Keogh* v. *Peck*, 316

Ill. 318.) The important thing is to establish the receipt of the notice. (*Young* v. *Clapp*, 147 Ill. 176; *Meyer* v. *Krohn*, 114 id. 574.) Appellee's street number, it is true, was 443 North Clark street instead of 447, as stated in the two notices. Neither of these notices, however, was returned to the sender. The notice of forfeiture was mailed to appellee on May 10, 1914. On the next day he filed the contract for record. The contract had been in his possession more than twenty-seven months, and recording it on the day after the declaration of forfeiture was mailed to him is a circumstance tending to show that he received that notice. Moreover, a month after the second notice was sent both notices were discussed by Crouch and appellee and the latter did not even suggest that he did not receive them. The facts and circumstances show that appellee received both notices.

Appellee further insists that even if the notices were received, strict compliance with the terms of the contract was thereafter waived and the contract continued in force. On May 18, 1914, after the notices had been sent, Crouch wrote appellee that he intended to make some alterations in the store building as well as other changes on the property; that appellee should remove his personal effects from the premises; that he, Crouch, had arranged with John Converse to take immediate possession and to care for the property, and that he was sorry appellee's disregard of his agreement had made necessary the action which had been taken. Converse testified that he took charge of the property and managed it until May, 1915. Crouch let the store building to a tenant for the summer of 1914 and so notified appellee. By reason of the latter's default Crouch was compelled to pay, and did pay, interest on the mortgage.

Appellee, apparently ignoring the notices of default and forfeiture, on July 14, 1914, mailed a letter to Crouch enclosing $25 to apply on the contract and stating that he would pay a like sum on the following Monday, but Crouch

returned the money by registered letter, with the statement that he did not care to renew the contract on such terms. Appellee paid no taxes on the property from 1912 until he redeemed from the master's sale in the foreclosure suit, on October 2, 1920. He relies upon a letter by Crouch dated July 31, 1914, asking him for reimbursement of his portion of the taxes on lot 20 paid by Crouch, as an evidence of the waiver of the forfeiture. At that time appellee owned the part of lot 20 which was not included in the contract. Crouch had paid the taxes on the whole of lot 20, and it was not strange that he should ask appellee to reimburse him for appellee's portion of the taxes. Such a request could not be construed as a waiver of the forfeiture of the contract, and it does not appear that appellee complied with the request by reimbursing Crouch for the taxes so advanced.

Appellee's redemption from the master's sale does not avail him to avoid the forfeiture of the contract. He had assumed payment of the mortgage and his failure to discharge it resulted in its foreclosure. The master's sale occurred about five and one-half, and redemption was made nearly six and one-half, years after appellee's interest in the property under the contract had been terminated for his default in performance. Hence the redemption was not made in pursuance of the contract.

Time was of the essence of the contract, and when the forfeiture was declared the contract was terminated, and nothing appears to justify the conclusion that the parties set it aside. Where a person has ceased to have an interest under a contract by reason of its forfeiture, he may thereafter deal with the subject matter as a stranger. (*Chrisman* v. *Miller*, 21 Ill. 226.) What appellee did after the forfeiture of the contract to obtain the property he did, in a legal sense, as a stranger and after the rights of third persons had intervened. Where a forfeiture has been de-

clared in the manner prescribed by the parties to a contract a court of equity will not ignore their action and make another contract for them but it will give effect to the existing contract. *Lang* v. *Hedenberg,* 277 Ill. 368; *Skeen* v. *Patterson,* 180 id. 289; *Wynkoop* v. *Cowing,* 21 id. 570; *McDonald* v. *Bartlett,* 324 id. 549.

Appellee insists that he made improvements which enlarged his equities in the property involved. The improvements which he made were of a minor character, and in a letter to Crouch concerning the property, dated October 14, 1918, appellee said, "I have nothing to speak of to lose, so I don't care." A purchaser may make improvements of a lasting character, as the result of which his position may be so changed that the court will be warranted in rendering a decree for specific performance, but if the improvements are not valuable and permanent no independent ground for specific performance is afforded. (*Christensen* v. *Christensen,* 265 Ill. 170.) Evidence of the making of any permanent or valuable improvements upon the property by appellee is wholly lacking.

The party seeking specific performance of a contract for a conveyance must show·that he has performed all the terms and conditions of the contract on his part, or that he was able, ready and willing to perform and was prevented from doing so by the act of the other party. (*Miller* v. *Shea,* 300 Ill. 180; *Willhite* v. *Schurtz,* 294 id. 309; *Wood* v. *Sheffer,* 248 id. 617; *Forthman* v. *Deters,* 206 id. 159.) Appellee has not complied with either of these requirements.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to dismiss appellee's bill of complaint for want of equity.

*Reversed and remanded, with directions.*