(No. 33820.—

HOMER D. SCHWARTZENTRUBER, Appellant, *vs.* WALTER C. STEPHENS *et al.,* Appellees.

*Opinion filed March 22, 1956.*

RAYMOND H. IMIG, and BRANSON WRIGHT, both of Bloomington, for appellant.

COSTIGAN, WOLLRAB & YODER, and JOSEPH W. DEPEW, both of Bloomington, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

On February 27, 1953, plaintiff brought an action in equity in the circuit court of McLean County seeking to have himself declared a mortgagor in possession of 30 acres off the south end of the east half of the northeast quarter of section 33, Danvers Township, McLean County, hereinafter referred to as tract I and a tenant in common with defendants Walter C. Stephens and Betty Stephens in the east half of the southeast quarter of section 33, Danvers Township, McLean County, hereinafter referred to as tract II.

In the complaint it is contended that conveyances of tracts I and II respectively by plaintiff and wife to defendants' predecessor in title are in fact mortgages securing indebtedness of plaintiff to Tillie Stephens. An injunction was asked from a threatened suit to evict plaintiff from said tracts I and II, and an accounting was sought of the moneys which plaintiff states he has paid to defendants and their grantor to satisfy sums due for principal, interest, taxes, insurance, expenses and maintenance of tracts I and II since dates of respective deeds. Plaintiff prayed to be decreed the equitable owner of tract I and the equitable owner in fee simple of an undivided interest in tract II.

The answer of defendants denied that the instruments were executed by plaintiff on the basis of the representations set forth in the complaint, wherein it was contended that the deeds were in fact mortgages; averred that said

deeds were given in complete release of the indebtedness secured by trust deed referred to in the complaint and the adjustment of the accounts between the heirs for money due them respectively in the settlement of the Daniel R. Schwartzentruber estate; the answer likewise denied the possession of plaintiff under any agreement as alleged in the complaint but averred his entry into a lease in 1934 for said tracts I and II with Tillie Stephens and a further lease entered into by plaintiff with defendants on October 25, 1951, after the death of said Tillie Stephens, and denied on the part of both defendants any knowledge of any transactions of Tillie Stephens with plaintiff as alleged in the complaint. The answer further set up estoppel against plaintiff from claiming to be the owner of the premises or any part thereof on account of the fact he had entered into a lease for the premises. The pleadings of defendants likewise alleged that the conveyances made to Tillie Stephens were in full payment of the indebtedness secured by the trust deed in question and set up release of the trust deed and also alleged that by reason of the conveyance the debt was extinguished and Tillie Stephens then had both the full legal and equitable title to tract I.

Defendants prayed that they be declared to be the owners of tracts I and II and that title to these tracts be quieted in defendants, and also prayed for an order directing the plaintiff to turn over their share of the crop and pasture rent from March 1, 1953, as provided for in the lease. There also followed further allegations of estoppel and the defense of *laches* which had earlier been pleaded.

The defendants also filed a counterclaim realleging matters set up in the answer and among other things prayed for a dissolution of the injunction, the quieting of title, the decreeing of defendants to be owners of the premises free and clear of any claims of plaintiff and further praying for the plaintiff to turn over to defendants their share of crops from March 1, 1953.

A hearing was had on the application for temporary injunction. The injunction was granted with bond being furnished. The case then came to issue on the pleadings and was referred to a special master.

The special master reported, finding the warranty deed to tract I was an absolute deed of the equitable and legal title of the grantors and not a conveyance of their interest as security or additional security for any indebtedness due and owing from the grantors therein to the said Tillie Stephens; the deed conveying tract II was in fact, and intended by the grantors to be, a conveyance of the entire legal equitable title of the grantors therein, and not intended as additional security for any indebtedness due and owing from the grantors therein or any one or more of them to Tillie Stephens; the consideration for the execution and delivery of both deeds was the cancellation, satisfaction and settlement of all indebtedness then due from plaintiff and other children of Daniel R. Schwartzentruber to Tillie Stephens and other members of the Daniel R. Schwartzentruber family or their surviving spouses; that said deeds were made and delivered pursuant to and as a part of a full settlement and adjustment of all indebtedness that then existed between the members of the Daniel R. Schwartzentruber family to and from each other; that in the making of the deeds Tillie Stephens did not act falsely or fraudulently with intent to deceive plaintiff in the procurement thereof and was not acting in any fiduciary capacity; that plaintiff was guilty of *laches* in failure to assert any equitable interest which he has or may have had in tracts I and II and by reason thereof he is now barred by law and equity from prosecuting this suit to the ends prayed for in his complaint. The special master recommended defendants be given the relief prayed by them in their counterclaim.

Objections of plaintiff made to the report of the special

master were overruled and stood as exceptions before the chancellor. The chancellor likewise overruled the exceptions and entered a decree substantially in conformance with the findings and recommendations of the special master. From that decree plaintiff has prosecuted this appeal to this court. On motion of plaintiff the injunction theretofore granted was continued in force during the pendency of this appeal, upon plaintiff filing a satisfactory bond.

The interest of the defendant Harry Lyle Mehl is not being contested in this proceeding and no appeal is taken from that portion of the decree relating to the judgment for $250 entered by the trial court in favor of Mehl and against plaintiff. The controversy in this case is confined solely to the rights of the plaintiff, Homer D. Schwartzentruber, and the defendants Walter C. Stephens and Betty S. Stephens.

Plaintiff sets forth eight errors relied upon for reversal. In his argument plaintiff states that the only question in this case is the question arising between Homer Schwartzentruber and Tillie Stephens's grantees, Walter C. Stephens and Betty S. Stephens, as to whether, as between Homer Schwartzentruber and Tillie Stephens, the deed to tract I, dated March 24, 1934, and the deed to tract II, dated September 13, 1933, constitute mortgages.

Plaintiff complains that the trial court erred in that the decree is contrary to the law and the manifest weight of the evidence. The conveyances to Tillie Stephens were by warranty deed. Section 12 of the Mortgage Act (Ill. Rev. Stat. 1953, chap. 95, par. 13,) provides that every deed conveying real estate which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. The burden of proof rests upon the one asserting a deed absolute in form to be a mortgage to

show that fact by clear, satisfactory and convincing proof. *Deadman* v. *Yantis,* 230 Ill. 243; *Rankin* v. *Rankin,* 216 Ill. 132; *Novak* v. *Kruse,* 288 Ill. 363.

As this court said in *Warner* v. *Gosnell, ante,* p. 24:

"There can be no question that a deed takes effect from its delivery and that its character at the time of such delivery becomes fixed as of that time. The question whether a deed which is absolute in form is to be taken as a mortgage depends upon the intention of the parties in that regard at the time of its execution. The intention may be found from the papers themselves or by aid of extraneous evidence which, when ascertained, will govern the decision.

"The law is well settled that the true character of the transaction may be shown by parol, and if, upon consideration of the facts, it clearly appears that the deed, though absolute in its form, was taken as security for the payment of money, it will in equity be held a mortgage. * * * The test or criterion, as was stated in the case of *Illinois Trust Co.* v. *Bibo,* 328 Ill. 252, at page 259, 'is the continued existence of a debt or liability intended as a security for the debt or indemnity against the liability.' If that liability is left subsisting, and if 'the grantor is regarded as still owing and bound to pay it at some future time. * * * then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulations they may have inserted in the instruments.'

"The gist of inquiry in cases of this class is what was the purpose for which the deed was executed; and it will be found, by references to the cases, that every fact or circumstance tending to illustrate the purpose and intent of the parties is admissible. The fact of an existing indebtedness in respect to which the deed was executed; the retention of the evidence of such indebtedness by the grantee in the deed; that the deed was procured by fraud or oppression or undue advantage; that there was a loan of money;

the subsequent conduct of the parties in respect to the land, and, indeed, almost every conceivable state of facts legitimately illustrative of the transaction has been held competent evidence."

The evidence shows that Daniel R. Schwartzentruber died intestate in 1919 leaving his widow, Elizabeth Schwartzentruber and his children, Tillie Stephens, Mona Stephens, Amelia Briggs, and plaintiff. At the time of his death Daniel R. Schwartzentruber owned tract II. A final report was filed in his estate reciting that the heirs desired to preserve his real estate intact without sale and to provide for the support and maintenance of his widow. It further provided that the widow was to have the income for life, she to apply the net income over what was required for her support, comfort and maintenance of the real estate toward the satisfaction and payment of any indebtedness due from Daniel R. Schwartzentruber including payments due from him to his children aggregating $13,613.50 with interest at five per cent from March 1, 1919, until paid. The final report further provided that the heirs would advance any sum required to pay and take up any indebtedness due from Daniel R. Schwartzentruber and that any amount advanced was to be adjusted at the death of the widow, provided the same had not been paid to them during her lifetime. The widow and heirs certified that the final report was true and consented that it be approved by the court.

As a part of the final report there was filed a memorandum of a family agreement signed by the widow and heirs. It recites, among other things, that there was due from Daniel R. Schwartzentruber to Tillie Stephens, $6001; to Mona Stephens, $5412.50; to Homer D. Schwartzentruber, $2200; which made the total of $13,613.50 referred to in the final report itself. It further contains a provision for interest and other recitals similar to those in the final report regarding disposition of the proceeds

during the life estate of the widow. It further provides that if the widow, at her death, shall not have completed payments to the heirs, of the amount due them, the same should be adjusted on the above basis among and between the heirs.

After the death of Daniel R. Schwartzentruber, plaintiff farmed tract II as tenant of his mother, reserving the tenant's share and, after paying the taxes and expenses of the farm, turned over the remainder of the landlord's share to his mother. He had exclusive charge of tract II in the interim between the death of his father and death of his mother, which occurred on September 6, 1933.

During the period plaintiff was in exclusive charge of tract II, as tenant of his mother, the house on tract II was destroyed by fire. The fire occurred March, 1931, and on October 23, 1931, all interested parties entered into an agreement whereby Tillie Stephens advanced another $2500 which was to be refunded to her and was to be a lien on tract II.

Plaintiff had rented the thirty acres, tract I, prior to March 1, 1920, when he purchased it. At the time of purchase he borrowed $4000 from Tillie Stephens, $3000 from Mona Stephens, and $2000 from William Miller and gave each of them a note. He later borrowed an additional $1000 from Tillie Stephens. He gave Tillie Stephens a new note for $5000 signed by himself and wife.

To secure Tillie Stephens for the $4000 he originally borrowed at the time of the purchase of tract I and the $1000 later obtained, plaintiff and his wife executed a trust deed to Lewis Stephens, trustee. This trust deed was dated May 21, 1932, and was due in three years. It covered tract I as well as plaintiff's undivided interest in tract II.

On September 13, 1933, plaintiff and his wife, Charles Stephens, widower of Mona Stephens, deceased, and Amelia Briggs and her husband executed a warranty deed transferring tract II to Tillie Stephens. This deed, designated

in the record as defendants' exhibit F, recites on its face:

"Subsequent to the death of Daniel R. Schwartzentruber, and in the course of settlement of said estate, his heirs entered into a family agreement which is reported in the settlement of the estate, whereby his widow became entitled to said premises for life and said life estate having now terminated, the surviving heirs have made this conveyance to carry out said family settlement and to evidence the fact that the indebtedness recited in said former family agreement as due and owing to the several children of Daniel R. Schwartzentruber is now fully paid and satisfied and that in the course of such settlement of accounts, the Grantee herein became entitled to a conveyance of this property and still retains her interest in the remaining real estate owned by said Daniel R. Schwartzentruber, at his death, but that all other accounts and affairs of Daniel R. Schwartzentruber's estate and the estate of his deceased daughter, Mona, are fully settled."

By another warranty deed, dated and acknowledged March 24, 1934, plaintiff and his wife transferred tract I to Tillie Stephens. This deed, designated in the record as defendants' exhibit H, was filed of record on March 30, 1934. It recites on its face:

"This deed is not a sale but is made to remove lien against said land and correct record title of grantee therein."

The trust deed dated May 21, 1932, to Lewis Stephens, as trustee, was released of record on the margin on March 30, 1934, the same day the warranty deed to tract I was filed of record. The due date of the trust deed was May 21, 1935. This marginal release by Lewis Stephens, trustee, recites:

"In consideration of full payment of the debt heretofore secured, the note having been fully paid, cancelled and surrendered in my presence I hereby cancel, release and discharge this trust deed of record."

This same trust deed was re-released on December 2, 1937, by Elmer Swearingen, successor trustee of Lewis Stephens, who certified that the trust deed, dated May 21, 1932, was, with the note accompanying it, fully paid, satisfied and discharged.

Following the recording of the deeds of conveyance of tracts I and II to Tillie Stephens, plaintiff continued to

farm both tracts. On October 4, 1934, plaintiff entered into a written lease with Tillie Stephens. He paid her a yearly rent of half the corn and two fifths of small grain and $5 per acre cash rent. Plaintiff did not pay any taxes, insurance or upkeep on the premises and did not keep any books with regard to such items. The arrangements under the lease continued throughout the balance of the life of Tillie Stephens.

On June 4, 1948, Tillie Stephens by a series of quitclaim deeds conveyed tracts I and II to herself and Walter C. Stephens as joint tenants. Tillie Stephens died June 13, 1948, nine days after the making and recording of these deeds. In 1949, by a series of deeds, a joint tenancy in tracts I and II was created in Walter C. Stephens and Betty S. Stephens, his wife.

Subsequent to the death of Tillie Stephens, plaintiff continued farming tracts I and II under the same arrangements had with her. He paid the rental to Walter C. Stephens until the management of the farm was taken over by Bloomington Farms Management Service. Then said farm came under the supervision of one Adams. Changes in the lease arrangement were discussed by Adams with plaintiff; and under date of October 25, 1951, a new lease was entered into between Adams as agent for Walter C. Stephens, as landowner, and plaintiff, as tenant. Plaintiff then operated under this new lease until October 30, 1952, at which time he was served with a notice of termination. Subsequently a lease was entered into between Walter C. Stephens and Harry Lyle Mehl for the term of one year from March 1, 1953.

At the time the suit was commenced on February 27, 1953, Tillie Stephens and her husband, Lewis Stephens, Mona Stephens and her husband, Charles Stephens, Amelia Briggs, and Elmer Swearingen, the successor in trust, were deceased.

The witnesses for plaintiff consisted of himself and a neighbor, George Mehl. Plaintiff testified, on direct examination, that his sister, Tillie Stephens, agreed with him that if he would sign the deeds, exhibits F and H, he could thereafter continue to farm tracts I and II, take out his share as tenant, and she would apply the balance less taxes to payment of the mortgage debt to her and when the same was satisfied she would reconvey tract I to him and would divide tract II with him fifty-fifty. There is no testimony in the record to corroborate this agreement.

On cross-examination, when plaintiff was questioned regarding the same deeds, he testified as follows:

"Q. Now at the time you signed these deeds Exhibit F (9/13/33) and Exhibit G (3/9/34) and Exhibit H (3/24/34), you understood, did you not, that the family, all of you, were cancelling out the indebtedness that was due Tillie at that time?

A. That is right.

Q. That included whatever money she had coming from your father's estate, the $2,500.00 that she had advanced and was a lien on Tract II.

A. That is right.

Q. And the money you owed her.

A. That is right."

The findings of the special master must be allowed to stand unless it can be said that such findings are clearly against the manifest weight of the evidence. He was in a better position to judge as to the questions in dispute than we are. He saw the witnesses and heard them testify.

After considering all of the evidence in the record we believe the special master correctly found that the execution and delivery of both deeds in question was the cancellation, satisfaction and settlement of all indebtedness due from plaintiff and other children of Daniel R. Schwartzentruber to Tillie Stephens and other members of the Daniel

R. Schwartzentruber family or their surviving spouses, and that the deeds in question were made and delivered pursuant to and as a part of a full settlement of all indebtedness that then existed between members of the Daniel R. Schwartzentruber family to and from each other.

We also concur with the special master that the weight of the evidence tends more reasonably to uphold the conclusion that the warranty deed, dated September 13, 1933, wherein plaintiff and other children of Daniel R. Schwartzentruber and their spouses conveyed tract II to Tillie Stephens, was in fact and was intended to be by the grantors therein a conveyance of the entire legal and equitable title of the grantors in tract II and was not intended to be a conveyance as additional security of any indebtedness due and owing from the grantors therein or any one or more of them to Tillie Stephens; that likewise the warranty deed, dated March 24, 1934, wherein plaintiff and his wife conveyed tract I to Tillie Stephens, was an absolute deed of the equitable and legal title of the grantors and not a conveyance of their interest therein as a security or additional security for any indebtedness due and owing from grantors therein to Tillie Stephens.

The testimony of all witnesses is void of any evidence of fraud or deceit on the part of Tillie Stephens in the making, execution and delivery of said deed. The special master was justified in finding that Tillie Stephens did not act falsely or fraudulently with intent to deceive plaintiff in the procurement thereof. We find nothing in the record to even suggest that fraud, undue or oppressive influence were used by Tillie Stephens.

The decree in this case reserved for future consideration the question of damages for wrongfully suing out the injunction. It was proper to make such reservation. *Hillmer Co.* v. *Behr,* 264 Ill. 568; *Johnson* v. *McNellis,* 228 Ill. 351; *Poyer* v. *Village of Des Plaines,* 123 Ill. 111; *Wing* v. *Dodge,* 80 Ill. 564.

In view of our conclusion it is unnecessary for us to consider other errors assigned and argued.

The decree of the circuit court of McLean County is affirmed.

*Decree affirmed.*