562 F.2d 511
 In the Matters of Walter J. KASSUBA et al., Debtors.
Walter J. KASSUBA, Intercontinental Development Co., Inc.,
and Transam Development Corporation, Appellants,
v.
REALTY INCOME TRUST, Appellee.
 No. 76-2242.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 23, 1977.
Decided Sept. 30, 1977.
 
 Stephen Novack, Norman H. Nachman, Chicago, Ill., for appellants.
 Mark E. MacDonald, James J. Johnson, Chicago, Ill., for appellee.
 Before CASTLE, Senior Circuit Judge, WOOD, Circuit Judge, and MARKEY, Chief Judge of U.S. Court of Customs and Patent Appeals.*
 CASTLE, Senior Circuit Judge.
 
 
 1
 This appeal presents the question of whether two transactions, by which the appellee acquired title to certain real property formerly owned by the appellants, were security arrangements in the nature of mortgages.
 
 
 2
 On July 28, 1970, appellant Intercontinental Development Co., Inc., (Intercontinental) conveyed a tract of land in Hoffman Estates, Illinois, to appellee Realty Income Trust (RIT) by warranty deed. The deed conveyed only the land itself and did not convey improvements on the land, which included a residential apartment complex of 14 buildings. At the same time, RIT leased the property back to Intercontinental for a term of 23 years and 11 months. The lease provided that, upon its termination either at the end of the term or upon default, ownership of the improvements would vest in RIT. As part of the lease, RIT granted Intercontinental an option to repurchase the land for a specified sum after the fourth lease year but before the term expired.
 
 
 3
 On June 30, 1971, appellant Transam Development Corp. (Transam) entered into a similar sale-and-leaseback arrangement with RIT. The subject of the transaction was a tract of land in Palos Hills, Illinois, which supported a residential apartment project of 18 completed buildings and one uncompleted building. The lease provided for a term of 22 years and four months. It provided that ownership of the improvements would vest in RIT upon its termination, and it granted the same repurchase option to Transam that RIT had granted Intercontinental.
 
 
 4
 Appellants Intercontinental, Transam and Walter J. Kassuba became debtors in possession in proceedings under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq., on December 21, 1973. On March 19, 1974, RIT filed a petition seeking inter alia leave to terminate its leases with Intercontinental and Transam and to recover possession of the properties and improvements. The appellants filed an answer in which they asserted that the transactions with RIT were in substance mortgages of the properties, under which Intercontinental and Transam were owner-mortgagors and RIT was a mortgagee. They asserted that RIT was not entitled to the properties and improvements free of the equity of redemption which appellants would possess in mortgage foreclosure proceedings.
 
 
 5
 After a hearing, the bankruptcy referee concluded that the transactions were not security arrangements but instead were bona fide sales and leasebacks with options to repurchase. The referee determined that the leases were in default and held that RIT was entitled to possession of the properties. The district court affirmed. We affirm.
 
 
 6
 The issue presented in this appeal is extremely narrow. Appellants have admitted that the parties to the transactions in question intended to enter into them on the terms and conditions as stated in the documents. They disclaim any contention that the transactions involved a hidden agreement between the parties. Instead, they invoke this court's equitable power to look beyond the "form" of each transaction and to examine its "substance," which they assert to be the set of economic benefits enjoyed by the parties as a result of the transaction. In brief, they point out that the purchase price that RIT paid for the land provided appellants with funds, as a loan would provide. They argue that the lease payments and the anticipated exercise of the repurchase option were in effect a return of interest and principal. The land was conveyed and the improvements were placed in jeopardy of forfeiture as security for the return of interest and principal. Although no enforceable debt existed by which RIT could recover the full amount of its investment if sale of the property was insufficient for that purpose, appellants assert that mortgage lenders often waive their right to a deficiency judgment and agree to look to the secured property as their sole remedy for nonpayment. Because the transactions were thus similar to mortgages, appellants argue, they must be treated as mortgages under Illinois law. We disagree.
 
 
 7
 If the warranty deeds and leases are given legal effect, RIT is the fee simple owner of the land at each location by reason of an absolute conveyance in the deed and termination of the lease without exercise of the repurchase option. RIT is the fee simple owner of the improvements on the land by reason of a forfeiture under the lease upon its termination. We recognize that a court of equity may look beyond the legal form of a transaction to examine its substance, but appellants misapprehend the substance underlying transactions of this nature. Under Illinois law, an instrument conveying real property shall be considered as a mortgage if it "shall appear to have been intended only as a security in the nature of a mortgage . . . ." Ill.Rev.Stat. ch. 95, § 55 (1975) (emphasis supplied). The Illinois Supreme Court has long recognized the rule that the real intention of the parties governs the question of whether a transaction conveys ownership of property and merely provides for repurchase at a future time or whether it conveys only a security in the nature of a mortgage. See, e. g., Schwartzentruber v. Stephens, 8 Ill.2d 222, 228, 133 N.E.2d 33, 35-36 (1956); Casper National Bank v. Jenner, 268 Ill. 142, 146, 108 N.E. 998, 999 (1915); 4 J. Pomeroy, Equity Jurisprudence § 1195, at 575 (5th ed. 1941). If the parties actually intended to effect an absolute transfer of ownership, a court of equity will not ignore that intent and make another contract for them. As Chief Justice John Marshall stated in Conway v. Alexander, 11 U.S. (7 Cranch) 218, 236-37, 3 L.Ed. 321 (1812):
 
 
 8
 To deny the power of individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands, defeasible by the payment of money at a future day, or, in other words, to make a sale, with a reservation to the vendor of a right to repurchase the same land at a fixed price and at a specified time, would be to transfer to the court of chancery, in a considerable degree, the guardianship of adults as well as infants. Such contracts are certainly not prohibited either by the letter or the policy of the law.
 
 
 9
 Thus, the parties by contract may create a set of mutual economic benefits that is similar to a mortgage without conferring on each other the rights and liabilities of judicial foreclosure, if that is what they actually intend. The substance of the transaction that a court of equity will examine is not its economic effect, which the parties determine by their agreement, but instead it is what their agreement is. What would be a contract case at law remains in equity a contract case.
 
 
 10
 This principle applies specifically to the provision in each transaction that ownership of the improvements would pass to RIT upon termination of the lease. Although part of the purchase price for the warranty deed was plainly attributable to the expected residual value of the improvements at the natural end of the lease term, the passage of title upon an earlier termination by default operated as a forfeiture of part of the earlier value of the improvements. Courts of equity abhor forfeitures, but
 
 
 11
 where a forfeiture has been declared in the manner prescribed by the parties to a contract the court will give effect to the contract. Thus, the general rule is stated in Johnson v. Crouch, 325 Ill. 559, at pages 568-9 (, 156 N.E. 754 at page 758); "Where a forfeiture has been declared in the manner prescribed by the parties to a contract a court of equity will not ignore their action and make another contract for them but it will give effect to the existing contract." The same rule is stated and like clauses held valid in McDonald v. Bartlett, 324 Ill. 549, (155 N.E. 477), Lang v. Hedenberg, 277 Ill. 368 (, 115 N.E. 566,) and Kingsley v. Roeder, 2 Ill.2d 131 (, 117 N.E.2d 82).
 
 
 12
 Eade v. Brownlee, 29 Ill.2d 214, 219, 193 N.E.2d 786, 789 (1963). Appellants therefore will not be relieved of the consequences of the actual bargain they made with RIT.
 
 
 13
 In many cases of this type, the intent of the parties is disputed and unclear, and a court must examine "every fact or circumstance tending to illustrate the purpose and intent of the parties" to determine whether the transaction was an equitable mortgage. Schwartzentruber v. Stephens, supra, 8 Ill.2d at 228, 133 N.E.2d at 36. Many of the factors relied on by the appellants would be relevant to a disputed issue on this point. Moreover, where the transaction involves both a conveyance and a contract for repurchase and where the surrounding circumstances leave the intent of the parties in doubt, a court of equity generally will treat the transaction as a mortgage. Keithley v. Wood, 151 Ill. 566, 573, 38 N.E. 149, 151 (1894); Pomeroy,supra at 576-77. This presumption is based on recognition that,
 
 
 14
 as lenders of money are less under the pressure of circumstances which control the perfect and free exercise of the judgment than borrowers, the effort is frequently made by persons of this description to avail themselves of the advantage of this superiority, in order to obtain inequitable advantages.
 
 
 15
 Conway v. Alexander, supra, 11 U.S. at 237, 3 L.Ed. 321. However, appellants have admitted that they were sophisticated in matters of real estate financing at the time of these transactions. They have conceded that RIT intended to avoid foreclosure requirements when it offered to enter into the transaction on the terms and conditions stated in the documents. And they have admitted that they intended to enter into the transactions under those terms and conditions. Appellants have removed any doubt about the intent of the parties. They have not shown any basis in equity for restraining the legal effect of the deeds and leases.
 
 
 16
 For the reasons stated above, the judgment of the district court is affirmed.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation